UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**EMILY FULLER**,

      Plaintiff,

vs.

**SKECHERS U.S.A., INC.**, a
foreign for-profit corporation,

      Defendant.

_____/

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff EMILY FULLER, through undersigned counsel, sues Defendant SKECHERS

U.S.A., INC., a foreign for-profit corporation, and alleges as follows:

1.      This is an action for declaratory and injunctive relief pursuant to Title III of the

Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28

C.F.R. Part 36.  This is also an action for declaratory and injunctive relief to prevent

discrimination which includes equal access to internet website for services to order Defendant's

merchandise online.

2.      This Court has jurisdiction over this case based on federal question jurisdiction,

28 U.S.C. §1331 and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief

pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein and injuries and

damages suffered occurred in the Southern District of Florida.

4.      Plaintiff EMILY FULLER is a resident of the State of Florida, resides within the Southern District of Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is and at all relevant times is visually disabled and suffers from alternating estropia; myopia, bilateral; and regular astigmatism, bilateral, a permanent eye disease and medical condition that substantially and significantly impairs her vision.  Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, accurately visualizing her world and adequately traversing obstacles.  As such, she is a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*., and in 42 U.S.C. 3602, §802(h).

6.      As a result of her being visually impaired and disabled, Plaintiff cannot use the computer without the assistance of appropriate and available screen reader software.

7.      Defendant is a foreign for-profit corporation authorized to do business and doing business in the State of Florida that is in the business of retail sales of casual shoes and related items.  Defendant owns and/or operates over 2,300 retail and outlet stores throughout the United States, including the State of Florida.

8.      Plaintiff's vision disability limits her in the performance of major life activities, including sight, and she requires assistive technologies, auxiliary aids and services for effective communication, including communication in connection with her use of a computer.

9.      Plaintiff frequently utilizes the internet.  Due to the fact that she is significantly and permanently visually impaired, in order to effectively communicate and comprehend information available on the internet and access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

2

10.     At all times material hereto, Defendant was and still is an organization which owns and operates a nationwide chain of retail and outlet stores under the brand name "Skechers."  Each store is open to the public.  As the owner and operator of these retail stores, Defendant is defined as a "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.     By virtue of being a retail store open to the public, each of Defendant's stores is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12.     Defendant controls, maintains, and/or operates an adjunct website called www.skechers.com.  One of the functions of Defendant's website is to provide the public information on the various locations of Defendant's stores that sell its merchandise throughout the United States and within the State of Florida.  Defendant also markets and sells to the public its merchandise and goods through its associated website.

13.     Defendant's associated website also services its stores by providing information on its brands of merchandise, tips and advice, editorials, sales campaigns, and events, and other information that Defendant is interested in communicating to its customers.

14.     Since the website allows the public the ability to locate its stores and retail locations, and sells merchandise offered for sale by Defendant and delivered from or offered to be picked up at its stores and warehouse facilities, the website is an extension of Defendant's physical stores.  By this nexus, the website is characterized as a place of public accommodation

per 42 U.S.C. § 12181(7)(E), and an extension of Defendant's brick and mortar locations and businesses.

15.     Because Defendant's website is a public store that is on-line, where the public can view and purchase Defendant's merchandise, the website is itself a sales establishment, which is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).   As such, the website must comply with all requirements of the ADA, and must not discriminate against individuals with disabilities and must not deny full and equal enjoyment of the services afforded to the public.

16.     At all times material hereto, Defendant was and still is an organization owning and operating the above-described website, www.skechers.com.   Since the website is open through the internet to the public as a retail store and is a place of public accommodation under the ADA, Defendant, as the owner and/or operator of the website, is defined as a "public accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2). As such, Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

17.     Plaintiff is and has been a customer who is interested in purchasing Defendant's merchandise, which is offered at Defendant's physical stores and which is also offered and sold through Defendant's website.

18.     The opportunity to shop for Defendant's offered merchandise from her home is an important accommodation for Plaintiff because traveling outside of the home as a visually impaired individual is often a difficult, hazardous, and frightening experience.   Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually impaired individuals.

4

19.    Like most consumers, Plaintiff accesses several websites at a time to compare merchandise and prices. When shopping online, Plaintiff may look at several dozens of websites to compare features and prices.

20.    During the month of June 2017, Plaintiff attempted on several occasions to utilize Defendant's website to browse through the merchandise to educate herself as to the merchandise being offered and with the intent of making a purchase through the website.

21.    Plaintiff utilizes Screen Reader software, which, when utilized, allows individuals who are visually impaired to communicate with internet website(s).  However, Defendant's website contains access barriers that prevent free and full use by visually impaired individuals using keyboards and screen reading software.  These barriers are pervasive and include, but are not limited to: mislabeled links; missing alt text for site images; empty forms; and content interfacing with screen reader sacrifices site functionality like checkbox and product interactions.

22.    Defendant's website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendant's merchandise from the website.

23.    Plaintiff attempted to locate an "Accessibility Notice" on Defendant's website which would direct her to a webpage with contact information for disabled individuals who have questions, concerns, or who are having difficulties communicating with the business.  However, Plaintiff was unable to do so because no such link or notice was provided on Defendant's website.

24.    The fact that Plaintiff could not communicate with or within Defendant's website left her feeling excluded, as she is unable to participate in the same online shopping experience

and access to merchandise as provided at the website and as experienced by the non-visually impaired public.

25.     Plaintiff continues to desire to patronize Defendant's website, but is unable to do so as she is unable to effectively communicate with Defendant due to her severe vision impairment.   Thus, Plaintiff, as well as others with vision impairments and disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because of the nexus between Defendant's retail stores and its website, and the fact that the website clearly requires input from Defendant's retail stores for its operation and use, the website is a place of public accommodation subject to requirements of the ADA.

27.     On information and belief, Defendant has not initiated a Web Accessibility Policy to insure full and equal use of its website by individuals with disabilities.

28.     On information and belief, Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

29.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of the website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of the website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of the website by individuals with disabilities.

33.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually impaired.

36.     On information and belief, Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the www.skechers.com website, applications, and digital assets accessible to the visually impaired community.

37.     On information and belief, Defendant's website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility.

38.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its website to visually impaired individuals who want the safety and privacy of purchasing Defendant's merchandise offered on its website online from their homes.

39.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40.     Further, public accommodations under the ADA must insure that their places of public accommodation provide effective communication for all members of the general public, including individuals with disabilities such as Plaintiff.

41.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic

7

life.   That mandate extends to internet shopping websites, such as the www.skechers.com website.

42.     On information and belief, Defendant is, and at all times has been, aware of the barriers to effective communication within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend information presented therein.

43.     On information and belief, Defendant is aware of the need to provide full access to all visitors to its website.

44.     The barriers that exist on Defendant's website result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired, including Plaintiff.

45.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

46.     Notice to Defendant is not required because of Defendant's failure to cure the violations.   Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

47.     Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.

**Trespass Violations**

48.     Plaintiff utilizes her personal computer to access websites such as the Defendant's www.skechers.com website. Plaintiff uses her personal computer as a method of conveyance of her personal information.   Plaintiff thus stores her personal information and retains her browsing history on her personal computer.

49.     Throughout its website, Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits. Specifically, Defendant informs the website user that the user's personal information and browsing history is collected and is used for targeted marketing and advertising. Further, Defendant discloses that any individual who accesses its website and commences to shop on that website is subject to having his or her personal information conveyed to third parties.  According to Defendant's website, those third parties include (but may not be limited to): (i) the Defendant's related affiliated companies (without so naming those other companies); (ii) service providers (without so naming the service providers); (iii) other third parties (without so naming the third parties); (iv) law enforcement officials (if so required to be transmitted by said law enforcement); and (v) to other third-party ad servers.

50.     Because of her severe visual impairment, Plaintiff was unable to comprehend Defendant's website; therefore, Plaintiff has had no choice, and likewise no knowledge, of Defendant's installation of data and information tracking software and the collection of the website user's browsing history and analytics placed on the user's computer.

51.     Based upon the review of Defendant's website, when a user accesses Defendant's website, Defendant installs software onto the user's computer, without the user's advance consent or knowledge.  It is also clear that Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

52.     As such, through its website, Defendant has committed a trespass against the Plaintiff, since the website places software on the Plaintiff's personal computer without Plaintiff's knowledge or consent.

## <u>COUNT I – VIOLATION OF THE ADA</u>

53.     Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

54.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA because it owns and/or operates the www.skechers.com website, as defined within §12181(7)(E), and is subject to the ADA.

55.     Pursuant to 42 U.S.C. §12181(7)(E), www.skechers.com is a place of public accommodation under the ADA because it provides the general public with the ability to purchase Defendant's merchandise online, and have those purchased items delivered to one's home or picked up from one of Defendant's retail stores.  Further, the website also serves to augment Defendant's stores by providing the public information on the various locations of the stores and to educate the public as to Defendant's available merchandise sold on the website and sold in its stores.

56.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

57.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

58.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

59.     Defendant's website must be in compliance with the ADA, but it is not, as specifically alleged hereinabove and below.

60.     As a result of the inaccessibility of Defendant's website, individuals with disabilities who are visually impaired are denied full and equal enjoyment of the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

61.     A sample review of just part of the Defendant's website reveals that the website is not functional for users who are visually impaired, including, but not limited to, the following:

a)  Mislabeled links;

b) Missing alt text for site images;

c) Empty forms; and

d) Content interfacing with screen reader sacrifices site functionality like checkbox and product interactions.

*See*, Declaration and Curriculum Vitae of Robert D. Moody, attached as Composite Exhibit "A".

62.     More violations may be present on other pages of the website, which can and will be determined and proven through the discovery process in this case.

63.     Further, Defendant's website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the website's accessibility information and accessibility facts.

64.     There are readily available, well established guidelines on the internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard.   Incorporating such basic components to make the website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

65.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to its website by individuals, such as Plaintiff, with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within Defendant's website are ongoing.

66.     The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

67.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be

provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70.     As alleged hereinabove, Defendant's website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71.     As a direct and proximate result of Defendant's failure to provide an ADA compliant website, with a nexus to its brick and mortar stores and physical locations, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of Defendant's website.

72.     As a result of the inadequate development and administration of the www.skechers.com website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a)     Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the www.skechers.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website.

b) Require Defendant to take the necessary steps to make the website readily accessible to and usable by visually impaired users, and during that time period prior to the www.skechers.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the website for purposes of viewing and locating Defendant's stores and locations, and becoming informed of and purchasing Defendant's merchandise online, and during that time period prior to the website's being designed to permit individuals with visual impairments to effectively communicate, to provide an alternative method for individuals with visual impairments to effectively communicate for such goods and services made available to the general public through Defendant's website.

74.     Plaintiff is entitled to recover her reasonable attorney's fees, costs and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A.  A declaration that Defendant's website is in violation of the ADA;

B.  An Order requiring Defendant to update its www.skechers.com website to remove barriers in order that individuals with visual disabilities can access the website and

effectively communicate with the website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendant to clearly display the universal disabled logo within its website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.skechers.com website;

D.  An order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.  An Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.  An Order directing Defendant to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually impaired;

G.  An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

H.  Such other and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

75.     Plaintiff re-alleges paragraphs 1 through 52 as if set forth fully herein.

76.     Plaintiff's tangible personal property, being her computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each

and every date that the Plaintiff has accessed Defendant's website, due to Defendant's employment of software analytics which are present on and through Defendant's website, which the Plaintiff has navigated.

77.     At all relevant times, Plaintiff did not consent to and was unaware that Defendant's website was placing software on her computer due to her inability to effectively communicate with and fully view and access the website.

78.     Plaintiff did not consent to the placement of tracking and information securing software on her personal computer; therefore, Defendant has committed a trespass against Plaintiff by placing such software on her computer without her knowledge or consent.

79.     By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Plaintiff's personal property in violation of Florida common law against trespass.

80.     Defendant's installation, operation, and execution of software on Plaintiff's computer has directly and proximately impaired the condition and value of the Plaintiff's computer, thereby causing Plaintiff damages.

81.     At the Defendant's website location, as part of its "Privacy Notice", Defendant states in pertinent part the following:

**How We Collect the Information**

There are many ways that SKECHERS obtains information from you:
•Via sign-up on any SKECHERS website
•From information provided by you when making an online or retail purchase
•When you enter a SKECHERS sweepstakes or giveaway
•When you sign up for SKECHERS Elite at a SKECHERS store or SKECHERS outlet
•Upon signing up at a SKECHERS event



**The Information We Collect**

When you register online to receive our email updates or when you register for the SKECHERS Elite™ program, you will need to provide us with your name, e-mail address, and confirm you are age 13 or older. When you make a purchase through SKECHERS.com, you also will need to give us your email address, shipping address, billing address (if different) and telephone number so we can process your payment and contact you in the event of any problems with delivery. If you contact our customer service department, you may need to provide us with additional information so that we can respond to your questions or concerns as completely and thoroughly as possible.

In order to provide users and subscribers with the most efficient and enhanced service and better understand your preferences, we may request your gender, shopping preference and product interest. Elite members can specify email notification preferences. Whether or not you provide this information is entirely up to you.

We also use automatic data collection technologies to collect additional non-personally identifiable information (for example, details of your visits to our website, information about your computer and Internet connection, such as browser type, browser version, operating system and IP address) which will concern the general use of our website. The navigational information allows us to see which areas of our website are most visited, and helps us improve the quality of your online experience by recognizing and delivering more of the most desired features and services. Note that we may also record user sessions. The technologies we use for this automatic data collection may include cookies and web beacons. Please see our Cookies Policy here for additional details on how Skechers uses cookies and other similar technologies.

**Behavioral Tracking**

SKECHERS may use automatic data collection technologies to collect information about your online activities over time and across third-party websites or other online services (behavioral tracking).

**How We Respond to Do Not Track Signals**

Although some browsers offer a "do not track" feature in order for you to request that the websites you visit do not track your online activities, our website is not currently set up to respond to do not track signals. Please see our Cookies Policy here for additional details on how Skechers uses cookies and other similar technologies.

**How We Use the Information**

All personal information that we obtain about you will be recorded, used and protected by us in accordance with current data protection legislation and this Privacy Policy. By providing us with your personal information, you consent to us processing this personal information in one or more of the ways described in this Privacy Policy.

We will primarily use your personal information to provide products and services to you, for example:

•To present our website and its contents to you.

•To administer contests, promotions, surveys or other site features and to provide you with the relevant products or services (for instance, to deliver a prize you may have won in a contest).

•To send you information via e-mail about products, offers and news we think could interest you. We only send you this if you have opted-in to receive SKECHERS e-mail messages. By providing us your email address through the SKECHERS website (e.g., registering to receive our email updates or registering for the SKECHERS Elite™ program) or by contacting our customer service department and specifically requesting to be added to our e-mail list, you are opting-in to receive SKECHERS e-mail messages.

•To fulfill and deliver all orders placed through our website.

•To carry out our obligations and enforce our rights arising from any contracts entered into between you and us, including for billing and collection.

•To notify you about changes to our website or our policies.

•To analyze visits to the website and learn about the interests of our visitors in the aggregate and better understand your personal interests and needs, so we can improve our products and services and deliver the type of content, features and promotions that you are most interested in.

•The information obtained from online registration is utilized to improve your shopping experience with SKECHERS by enabling you to earn reward points, obtain a faster checkout for purchases and/or opt-in to receive promotional e-mails, which provide you with the latest and greatest information regarding SKECHERS and its products.

•The telephone and credit card number information we ask for when you order online is used only to complete the order, confirm the order and confirm shipment of the order. This information is then stored only for the purposes of faster checkout (for Elite Members only), and is not used for any other purpose.

**Sharing Information with Third Parties**

Except as described in this Privacy Policy, SKECHERS does not sell, rent or trade any personal information you provide to us online or at our stores, nor do we share such information with third parties. We may disclose personal information about you to third parties who provide services to us and who agree to maintain the confidentiality of such information in accordance with this Privacy Policy and use the information only in connection with the services they provide.

Examples of these services include payment processing and authorization, fraud protection and credit risk reduction, product customization, order fulfillment and shipping, marketing and promotional material distribution, website evaluation, data analysis and, where applicable, data cleansing. We may need to share personal information with these third parties so that they can perform these services; however,

we limit the personal information that we give to them and authorize them to use this information only for the purpose of performing those services.

In proceeding with your online order, you agree that both your name and address and those of the delivery name and address (if different) may be checked using third parties such as credit agencies. If you are providing a delivery name and address which is not your own, you must have that person's permission to give us their personal information and for us to use it for the purposes specified. By providing it, you are saying that you have their permission.

We share aggregated demographic information about our user base with our agents, including agencies or third party vendors so that they can provide marketing analysis and consult on advertising strategies. This information does not identify individual users. We also may share non-personal information (such as the number of users who visited the website during a specific time period or who purchased a specific product through the website) with our marketing partners, advertisers and others from time to time. This information generally is shared in an aggregated form.

We may release personal information if we believe in good faith that: the law or legal process requires it; if we have been advised by counsel; we have received a valid administrative request from a law enforcement agency; or such release is necessary to protect the rights, property or safety of SKECHERS or any of our respective affiliates, business partners, customers or others.

As with any business, it is possible that as our business develops, we might go through a business transition, such as a merger, acquisition by another company, sale of all or a portion of our assets or buying online stores or other assets. In such transactions, information about customers will likely be transferred. If that happens, your personal information may be disclosed to another company, but that disclosure will be subject to the Privacy Policy in effect.

Personal information submitted to or collected through this website may be stored and/or processed in the United States for the purposes described in this privacy policy. By using SKECHERS products and services (including our website), you consent to any such transfer of information outside of your country.

82.     Defendant's trespass to chattels, nuisance, and interference caused real and substantial damage to the Plaintiff as follows:

a)   By consuming the resources of and/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b)  By infringing on Plaintiff's right to exclude others from her computer;

c)  By infringing on Plaintiff's right to determine, as the owner of her computer, which programs should be installed and operated on her computer;

d)  By compromising the integrity, security, and ownership of Plaintiff's computer; and

e)  By forcing Plaintiff to expend money, time, and resources in order to remove the programs that had been installed on her computer without notice or consent.

83.    Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

WHEREFORE, Plaintiff demands judgment be entered against Defendant for all of Plaintiff's compensatory damages, interest, costs, and such further relief as the Court deems just and equitable.

DATED:  September 14th, 2017.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
8751 W. Broward Blvd., Suite 303
Plantation, FL 33324
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: pduran@pelayoduran.com

By____*s/ Roderick V. Hannah*_____
          RODERICK V. HANNAH
          Fla. Bar No. 435384

By ____*s/ Pelayo M. Duran*_____
          PELAYO M. DURAN
          Fla. Bar No. 0146595