**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:17-cv-61790-KMM

EMILY FULLER,

      Plaintiff,

vs.

SKECHERS USA, INC.,

      Defendant.

_____/

**DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S**
**COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................1

II. BACKGROUND ................................................................................................4

    A.  Background Regarding Plaintiff's ADA Claim ......................................4

        1.  Factual Allegations .......................................................................4

        2.  Government Regulation of Website Accessibility.......................6

    B.  Factual Allegations Regarding Plaintiff's Trespass Claim .....................7

III. ARGUMENT .....................................................................................................7

    A.  Legal Standard Governing a Motion to Dismiss....................................7

    B.  Plaintiff's ADA Claim Fails Because the Complaint Does Not Allege Discrimination in the Enjoyment of a Place of Public Accommodation ................8

        1.  Skechers.com Is Not Itself a "Place of Public Accommodation"...............8

        2.  Skechers.com Cannot Be Deemed a "Place of Public Accommodation" Based on Its Nexus to Skechers' Retail Stores............10

        3.  Plaintiff Has Not Alleged that the Design of Skechers.com Affected Her Personal Use or Enjoyment of Skechers' Retail Locations...................12

    C.  Plaintiff's ADA Claim Fails for the Independent Reason that It Violates Skechers' Constitutional Right to Due Process ....................................15

    D.  Plaintiff's Trespass Claim Fails as a Matter of Law...............................18

IV. CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Access Now, Inc. v. Sw. Airlines, Co.*,
227 F. Supp. 2d 1312 (S.D. Fla. 2002) .......................................................................9, 10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................7, 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................7, 8

*Brother v. CPL Invs, Inc.*,
317 F. Supp. 2d 1358 (S.D. Fla. 2004) .............................................................................17

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) ............................................................................................17

*Enter. Rent-A-Car Co. v. U-Haul Int'l, Inc.*,
327 F. Supp. 2d 1032 (E.D. Mo. 2004).............................................................................11

*Ford v. Schering–Plough Corp.*,
145 F.3d 601 (3rd Cir. 1998) ..............................................................................................9

*Ga. Pac. Corp. v. Occupational Safety & Health Review Comm'n*,
25 F.3d 999 (11th Cir. 1994) .............................................................................................15

*Gil v. Winn Dixie Stores, Inc.*,
242 F. Supp. 3d 1315, 1320 (S.D. Fla. 2017) ......................................................9, 10, 11, 12

*Gomez v. Bang & Olufsen Am., Inc.*,
2017 WL 1957182 (S.D. Fla. Feb. 2, 2017) .............................................................. passim

*Grayned v. City of Rockford*,
408 U.S. 104 (1972)...........................................................................................................15

*Kidwell v. Fla. Comm'n on Human Relations*,
2017 WL 176897 (M.D. Fla. Jan. 17, 2017)........................................................................9

*Louie v. NFL*,
185 F. Supp. 2d 1306 (S.D. Fla. 2002) ...............................................................................8

*Monteleone v. Palmer*,
2009 WL 3067069 (N.D. Fla. 2009).................................................................................15

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Najieb v. Chrysler–Plymouth,*
2002 WL 31906466 (N.D. Ill. Dec.31, 2002) ........................................................20

*Nat'l Fed'n of the Blind v. Target Corp.,*
452 F. Supp. 2d 946 (N.D. Cal. 2006) .............................................................11, 12

*Parker v. Metro. Life Ins. Co.,*
121 F.3d 1006 (6th Cir. 1997) ...........................................................................9

*Pearl Invs., LLC v. Standard I/O, Inc.,*
257 F. Supp. 2d 326 (D. Me. 2003) ...................................................................20

*Rendon v. Valleycrest Prods., Ltd.,*
294 F.3d 1279 (11th Cir. 2002) ..........................................................................9

*Robles v. Dominos Pizza LLC,*
2017 WL 1330216 (C.D. Cal. Mar. 20, 2017).....................................12, 13, 16, 17

*Stevens v. Premier Cruises, Inc.,*
215 F.3d 1237 (11th Cir. 2000) ..........................................................................9

*Weyer v. Twentieth Century Fox Film Corp.,*
198 F.3d 1104 (9th Cir. 2000) ...........................................................................9

STATE CASES

*Burshan v. National Union Fire Insurance Co. of Pittsburgh,*
805 So. 2d 835 (Fla. 4th DCA 2001) .................................................................19

*C.I.T. Corp. v. Brewer,*
200 So. 910 (Fla. 1941)...................................................................................18

*Coddington v. Staab,*
716 So. 2d 850 (Fla. 4th DCA 1998) .................................................................18

*Curington v. State,*
86 So. 344 (Fla. 1920).....................................................................................18

*Fla. Packing & Ice Co. v. Carney,*
41 So. 190 (Fla. 1906).....................................................................................19

FEDERAL STATUTES

42 U.S.C. § 12101...........................................................................................6

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

42 U.S.C. § 12181(7) .................................................................................................9

42 U.S.C. § 12182(a) .............................................................................................1, 8

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1

Fed. R. Evid. 201 ...................................................................................................11

**FEDERAL REGULATIONS**

28 C.F. R. pt. 36 ....................................................................................................17

28 C.F.R. pt. 36 app. A (1991).................................................................................6

75 Fed. Reg. 43,460 (July 26, 2010)...................................................................6, 16

80 Fed. Reg. 77,710 (Dec. 15, 2015) .......................................................................7

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 217.......................................................................18

Restatement (Second) of Torts § 218(b) ..................................................................20

W3Techs, World Wide Web Technology Surveys,
    https://w3techs.com/technologies/details/ce-cookies/all/all ...................................19

Defendant Skechers USA, Inc. ("Skechers"), by and through its undersigned counsel, respectfully moves to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) and submits this memorandum of law in support of its motion.

## I.     INTRODUCTION

Defendant Skechers is a footwear and apparel company.  The principal allegation in Plaintiff's complaint is that Skechers' website, skechers.com, violates the Americans with Disabilities Act (the "ADA").  Plaintiff's ADA claim fails on two independent grounds.

*First*, Plaintiff does not allege an indispensable threshold requirement for bringing suit under Title III of the ADA: that she was discriminated against in her use or enjoyment of a "place of public accommodation."  42 U.S.C. § 12182(a).  Courts in the Eleventh Circuit have uniformly held that websites are not places of public accommodation.  An allegedly inaccessible commercial website can only give rise to liability under the ADA in one limited circumstance: when the website has such a close nexus with a place of public accommodation (typically, the company's retail stores) that the website obstructs disabled customers' full use or enjoyment *of the retail stores*.  For example, such a nexus may exist when purchases at the brick-and-mortar store can be ordered online before being picked up at the store.  Plaintiff has not pleaded such a close nexus here.  The only connection between skechers.com and Skechers' retail locations is that users of the website can look up the location of the retail stores.  This feature does not affect the ability of disabled customers to use and enjoy Skechers' retail stores to the same extent as nondisabled customers.  Indeed, that same information is readily available to anyone who dials Skechers' toll-free customer service number or types "Skechers store Miami" into Google.

Even if Plaintiff could plead a sufficient nexus between skechers.com and Skechers' retail outlets, Plaintiff would fail to plead that *she* was discriminated against in her use of enjoyment of a "place of public accommodation," because the complaint rests entirely on the

1

allegation that Plaintiff was denied access to Skechers' *website*.  Plaintiff does not allege that she ever visited, or even intended to visit, a Skechers retail store, or that she was ever denied appropriate access to a retail store.  In fact, she pleads the opposite: she alleges that she prefers online shopping to shopping in retail stores, and that the design of Skechers' website leaves her "unable to participate in the same *online shopping experience*" as nondisabled users.  (Compl. ¶¶ 18, 24 (emphasis added).)  Nor does Plaintiff allege that she ever sought to use any of the features purportedly connecting the website and the brick-and-mortar stores—Plaintiff does not so much as allege that she looked up a store location on skechers.com.  As another court in this District recently held, the "grievance … that [a] Defendant's website does not provide a blind person with the same online-shopping experience as non-disabled persons" is not redressable under the ADA.  *See Gomez v. Bang & Olufsen Am., Inc.*, No. 1:16-CV-23801, 2017 WL 1957182, at *4 (S.D. Fla. Feb. 2, 2017).  To be clear, Skechers is committed to serving people of all abilities, and its website has numerous features that permit visually impaired users to access it, even if not required by the ADA.  But to "survive a motion to dismiss, Plaintiff must claim an actual (not hypothetical) impediment to the use of Defendant's *retail location*"—and that Fuller does not do.  *Id.* (emphasis added).

*Second*, even where a website is so intricately linked with a physical space that it is a place of public accommodation under the ADA, it is a violation of due process to enforce implementation of the arbitrarily chosen accessibility standards that Skechers is alleged to have violated here.  Plaintiff faults Skechers for operating a website that fails to comply with the "WCAG" guidelines, which are voluntary website accessibility guidelines developed by a non-

2

governmental international organization called W3C.[1]  (Compl. ¶ 37.)  Elsewhere, Plaintiff asserts that "[t]here are readily available, well established guidelines on the internet for making websites accessible," though the complaint does not specify what those guidelines are or who promulgates them.  (*Id.* ¶ 64.)  Plaintiff even seeks injunctive relief compelling Skechers to "clearly display" a special logo on its website, without alleging that any federal antidiscrimination laws, statute, or regulation requires that websites do so.  (*Id.* ¶ 74(C).)

Plaintiff seeks to hold Skechers liable for failing to comply with this grab-bag of purported requirements in spite of the fact that the federal agency responsible for issuing regulations interpreting the ADA—the Department of Justice ("DOJ")—is in the middle of a rulemaking process in which it is evaluating whether to adopt accessibility guidelines for websites, and has yet to issue mandatory rules.  Imposing liability on Skechers for allegedly violating the WCAG and other guidelines *before* the DOJ has finally decided what standards, if any, should apply to commercial websites would violate the basic due-process principle that defendants are entitled to sufficient notice as to what behavior complies with the law.

Plaintiff's complaint also pleads a second, even more implausible claim: Plaintiff alleges that she is a victim of "trespass" because skechers.com—like hundreds of thousands of other websites—tracks digital information about visitors to the site and allegedly installs cookies or other software on the computers of visitors to the site.  This "digital trespass" claim has no precedent in Florida law.  In Florida, trespass to chattels consists of an attempt to seize manual control of physical property, such that its rightful owner no longer possesses it or cannot use it.  No Florida case has ever recognized a claim for trespass to purely digital property, as Plaintiff

---

[1] Skechers disputes that its website fails to comply with the WCAG guidelines or that its website is inaccessible to visually impaired users in any other respect.  For purposes of this motion to dismiss, however, Skechers assumes the truth of the allegations in Plaintiff's complaint, as it must.

alleges here.  Nor does such a claim make any sense: under Plaintiff's theory, *any* visitor to *any* website that tracks personal information about its users—that is, virtually every modern commercial website—would have a cause of action for trespass based on the cookies that sites use to track user data.  This is not the law.  In any event, even if Plaintiff's "digital trespass" claim existed, it would fail because the complaint does not allege that the "trespass" impaired the condition or value of her property, a required element of trespass to chattels.  Plaintiff concedes that she *uninstalled* whatever software Skechers allegedly installed on her computer.

## II.      BACKGROUND

### A.      Background Regarding Plaintiff's ADA Claim

#### 1.      Factual Allegations

Plaintiff alleges that she is a visually impaired individual who finds traveling outside of the home a "difficult, hazardous, and frightening experience."  (Compl. ¶¶ 5, 18.)  For that reason, Plaintiff alleges that she prefers shopping online to shopping in physical stores.  (*Id.* ¶¶ 17–18.)  Plaintiff alleges that she visited Skechers' website, www.skechers.com, several times in June 2017 "with the intent of making a purchase through the website."  (*Id.* ¶ 20.)  Beyond those bare facts, the complaint is devoid of specific factual allegations about Plaintiff's use of Skechers' website: Plaintiff does not allege what products she attempted to buy, what pages of the website she attempted to visit, or what specific pages or features of the website she was unable to access.

Plaintiff alleges that she uses unspecified "Screen Reader software" to access the internet, and that Skechers' website "contains access barriers that prevent free and full use by visually impaired individuals using keyboards and screen reader software."  (*Id.* ¶ 21.)  The complaint identifies four generic examples of alleged "access barriers"—"mislabeled links," "missing alt text for site images," "empty forms," and "content interfacing" that "sacrifices site functionality

4

like checkbox and product interactions" (*id.* ¶¶ 21, 61)—but does not offer any specific examples of where these access barriers occurred on skechers.com, nor explain how they prevented Plaintiff from using the website.[2]  Plaintiff alleges that Skechers' website fails to meet the "Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of webs accessibility," though the complaint does not contain any allegations about which aspects of the Skechers' website run afoul of the WCAG standards or which of the standards the website violates.  (*Id.* ¶ 37.)  Plaintiff also alleges that the website lacks an "Accessibility Notice" page with separate information for disabled users, and "does not offer or include the universal symbol for the disabled" on its homepage.  (*Id.* ¶¶ 23, 63.)  Finally, the complaint alleges Skechers has failed to take various other steps, such as designating an employee a "Web Accessibility Coordinator," instituting a "Web Accessibility User Accessibility Testing Group," or adopted a "Bug Fix Priority Policy." (*Id.* ¶¶ 27–34.)  It is not clear from the complaint whether Plaintiff is alleging that the foregoing website features and corporate policies are required by federal law.

Plaintiff alleges that the fact that she "could not communicate with or within Defendant's website left her feeling excluded," because she was "unable to participate in the same online shopping experience and access to merchandise as provided at the website" to non-visually impaired users.  (*Id.* ¶ 24.)  Plaintiff also alleges that she "continues to desire to patronize Defendant's website," but is unable to do so because of her vision impairment.  (*Id.* ¶ 25.) Plaintiff does not allege that she was ever denied access to a physical Skechers store or had trouble locating one, nor even that she ever desired or attempted to visit a physical Skechers

---

[2] A declaration attached to the complaint by a consultant named Robert Moody states that Moody reviewed "screen capture[s] provided by the Plaintiff" that show that the access barriers are "dramatically impairing the Plaintiff's ability to use the web site."  (Compl. Ex. A, ECF p. 26.)  Tellingly, Plaintiff does not include these "screen captures" in, or attach them to, her complaint.

retail store.  Plaintiff also does not allege that her purported inability to use Skechers' website had any impact on her ability to use or enjoy Skechers' physical locations.

### 2.      Government Regulation of Website Accessibility

The ADA was enacted in 1990, *see* 42 U.S.C. § 12101 *et seq.* (1990), and the DOJ promulgated its implementing regulations in 1991, including the ADA Standards for Accessible Design.  *See* 28 C.F.R. pt. 36 app. A (1991).  In 2010, the DOJ issued a Notice of Proposed Rulemaking in which it announced it was considering for the first time issuing regulations relating to the accessibility of internet sites to disabled users.  Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 43,460 (July 26, 2010) (hereafter "NOPR").  Although the DOJ acknowledged that "[t]he Internet has been governed by a variety of voluntary standards or structures developed through nonprofit organizations using multinational collaborative efforts," the DOJ stated that "clear guidance on what is required under the ADA does not exist."  *Id.* at 43,463–64.

The NOPR discussed the WCAG accessibility standards in detail.  The DOJ explained that the WCAG are a set of "*voluntary* international guidelines for Web accessibility," with three different "conformance levels": A, AA, or AAA, with Level A representing "criteria that provide basic Web accessibility and that are the most feasible for Web content developers"; Level AAA representing "criteria that may be less feasible for Web content developers"; and Level AA an intermediate position between the two.  *Id.* at 43,465 (emphasis added).  In light of these varying standards and the different "compliance burdens and costs" each entails, the NOPR sought comments from the public as to (1) whether the DOJ should adopt WCAG at all; and (2) if so, what conformance level of WCAG it should adopt.  *Id.*  Plaintiff's complaint alleges that Skechers' website "does not meet the [WCAG] 2.0 Basic Level of accessibility," but does not

specify whether the "Basic Level of accessibility" means the A, AA, or AAA compliance level. (Compl. ¶ 37.)

The DOJ has not yet issued a final rule.  In December 2015, the DOJ announced that it expects to publish its proposed rules in 2018.  *See* Introduction to the Unified Agenda of Federal Regulatory and Deregulatory Actions, 80 Fed. Reg. 77,710, 77,807 (Dec. 15, 2015) (Department of Justice (DOJ)—Fall 2015, Statement of Regulatory Priorities).

### B.    Factual Allegations Regarding Plaintiff's Trespass Claim

Plaintiff alleges that Skechers informs users of its website that their "personal information and browsing history is collected" when they visit skechers.com, and that in some cases Skechers shares data about visitors to its website with affiliates or other third parties. (Compl. ¶ 49.)  Plaintiff claims that Skechers "place[s] forms of software" on visitors' computers "to collect non-public information on the website's user's preferences and internet browsing habits," though Plaintiff does not plead specifically what software Skechers allegedly installs on users' computers—beyond "browser cookies"—or how it does so without user consent.  (*Id.* ¶¶ 49, 51.)  The complaint alleges that Skechers' installation of software on Plaintiff's computer "impaired the condition and value" of the computer in some unspecified way, but Plaintiff also alleges that she "remove[d] the programs" that the Skechers website purportedly installed on her computer.  (*Id.* ¶¶ 80, 82(e).)

### III.    ARGUMENT

### A.    Legal Standard Governing a Motion to Dismiss

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "'[A] formulaic recitation of the elements of a cause of action will not do'"; to state a claim, the allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

**B.**   **Plaintiff's ADA Claim Fails Because the Complaint Does Not Allege Discrimination in the Enjoyment of a Place of Public Accommodation**

Title III of the ADA bars discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). To state a claim for relief under Title III, a plaintiff must therefore allege "(1) that he is a qualified individual with a disability; (2) that he was discriminated against in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation; and (3) that the discrimination was on the basis of his disability." *Louie v. NFL*, 185 F. Supp. 2d 1306, 1308 (S.D. Fla. 2002).

Plaintiff's ADA claim fails as a threshold matter because the complaint does not allege that Plaintiff was discriminated against "in the full and equal enjoyment … of any place of public accommodation." 42 U.S.C. § 12182(a). Courts in the Eleventh Circuit have uniformly held that websites themselves are not places of public accommodation unless a sufficiently close nexus exists between the inaccessibility of a commercial website and an individual's' inability to use or enjoy the defendant's physical retail stores. Plaintiff's claim fails both because (1) she fails to plead a sufficiently close nexus between skechers.com and those physical stores; and (2) she fails to plead that she ever intended to use or enjoy Skechers' brick-and-mortar locations.

**1.**   **Skechers.com Is Not Itself a "Place of Public Accommodation"**

The complaint first alleges that skechers.com "is *itself* … a place of public

accommodation." (Compl. ¶ 15 (emphasis added).) But courts in this district have squarely

rejected that argument. The Eleventh Circuit has held that a place of public accommodation

must be a "concrete space," not an intangible one. *See Rendon v. Valleycrest Prods., Ltd.*, 294

F.3d 1279, 1284 (11th Cir. 2002); *see also Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d

1312, 1318 (S.D. Fla. 2002) (observing that "the Eleventh Circuit has recognized Congress' clear

intent that Title III of the ADA governs solely access to physical, concrete places of public

accommodation" and citing *Rendon*). Following *Rendon*, district courts in the Eleventh Circuit

have "uniformly held" held that websites, standing alone, are not "places of public

accommodation."[3] *Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1320 (S.D. Fla. 2017);

*see also Bang & Olufsen*, 2017 WL 1957182, at *3 ("[A] website that is wholly unconnected to a

physical location is generally not a place of public accommodation under the ADA."); *Access

Now*, 227 F. Supp. 2d at 1321 (holding that "the Internet website at issue here is [not] a physical,

public accommodation itself as defined by the ADA"); *Kidwell v. Fla. Comm'n on Human

Relations*, No. 2:16-CV-403-FTM-99CM, 2017 WL 176897, at *5 (M.D. Fla. Jan. 17, 2017)

(website is not a public accommodation because it is "located in no particular geographical

location" (quoting *Access Now*, 227 F. Supp. 2d at 1321)).

---

[3] The rule that district courts in the Eleventh Circuit have developed—that websites are not themselves places of public accommodation—is consistent with the Eleventh Circuit's holding that Title III of the ADA offers a "*comprehensive* definition of 'public accommodation'" (from which websites are conspicuously absent). *See Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1240–41 (11th Cir. 2000) (citing 42 U.S.C. § 12181(7)). Several other circuits are in accord. *See, e.g.*, *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (concluding that places of public accommodation are "actual, physical places"); *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 614 (3rd Cir. 1998) (holding that the term "public accommodation" refers to physical places); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010–11 (6th Cir. 1997) (same).

2.     **Skechers.com Cannot Be Deemed a "Place of Public Accommodation" Based on Its Nexus to Skechers' Retail Stores**

Recognizing that skechers.com is not itself a place of public accommodation, Plaintiff next alleges that the website should be treated as "an extension of Defendant's brick and mortar locations and businesses." (Compl. ¶ 14.) A disability-discrimination claim based on the accessibility of a website will survive a motion to dismiss only if the complaint "establish[es] a nexus between the website and the physical premises of a public accommodation," *Winn Dixie*, 242 F. Supp. 3d at 1320, such that it is clear that the "website's inaccessibility impedes the plaintiff's access to a specific, physical, concrete space," *Bang & Olufsen*, 2017 WL 1957182, at *3 (citation and internal quotation marks omitted). To sufficiently allege a nexus between an allegedly inaccessible website and a concrete public accommodation, a company's website must be "heavily integrated with" and "operate[] as a gateway to" its physical store locations. *Winn Dixie*, 242 F. Supp. 3d at 1321.

Plaintiff's complaint fails to establish the requisite nexus between the Skechers website and her "access to a specific, physical, concrete space." *Access Now*, 227 F. Supp. 2d at 1321. The only factual allegations in Plaintiff's complaint about the relationship between skechers.com and Skechers' physical stores appear in paragraph 14 of the complaint, where Plaintiff alleges that "the website allows the public the ability to locate its stores and retail locations, and sells merchandise offered for sale by Defendant and delivered from or offered to be picked up at its stores and warehouse facilities[.]" (Compl. ¶ 14.) As a preliminary matter, Plaintiff is wrong that skechers.com offers products "to be picked up at its stores and warehouse facilities." Skechers.com allows users to shop online, but not to order products to be picked up in stores.[4]

---

[4] *See* http://www.skechers.com. The Court may take judicial notice of the features of Skechers' website on a motion to dismiss. *See, e.g.*, *Enter. Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1042 (E.D. Mo. 2004) (taking judicial notice of features on the home pages of

The only features suggesting a "nexus" between Skechers' website and its physical locations are therefore that (1) the website has a "store locator" feature and (2) goods ordered online are shipped from physical warehouses.

These facts falls far short of establishing that skechers.com "operates as a gateway" to Skechers' physical stores. *Winn Dixie*, 242 F. Supp. 3d at 1321. In *Winn Dixie*, the plaintiff alleged that the website of the supermarket chain Winn Dixie allowed customers to fill or refill medical prescriptions for pick-up at in-store pharmacies. *Id.* at 1318. In this manner, Winn Dixie's website acted as a "gateway" to its pharmacies, and the company's allegedly inaccessible website operated as an "intangible barrier[]" that "restrict[ed] a disabled person's ability to enjoy [Winn Dixie's] goods, services and privileges." *Id.* at 1320 (citation and internal quotation marks omitted). The inaccessibility of the Winn Dixie website to vision-impaired users "prevented the plaintiffs from accessing a privilege" that Winn Dixie's brick-and-mortar pharmacies afforded to nondisabled customers—namely, the ability to do in-store pick-up of medicines ordered online. *Id.*; *see also Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 949 (N.D. Cal. 2006) (sufficient nexus between Target.com and Target store locations existed where plaintiff alleged that Target customers could use the website to refill prescriptions and order photo prints for in-store pick-up); *Robles v. Dominos Pizza LLC*, No. CV 16–06599 SJO (SPx), 2017 WL 1330216, at *3 n.1 (C.D. Cal. Mar. 20, 2017) (nexus existed between Dominos Pizza restaurants and website that could be used to place pizza orders).

---

emove.com and uhaul.com). Because the features of skechers.com are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"—namely, the website itself—Plaintiffs' conclusory (and erroneous) allegation about the website's features need not be credited. Fed. R. Evid. 201.

Skechers has a program called "In-Store Web Orders," which permits customers *at Skechers retail locations* to order out-of-stock items from Skechers distribution centers, *see* https://skechersus.freshdesk.com/support/solutions/articles/19000005517-in-store-web-orders, but no program for allowing goods ordered online to be picked up in-store.

By contrast, the Skechers website does not give online users superior access to goods or services in Skechers' stores in any respect. The only features of Skechers' website that are connected in some way to its physical locations—the ability to look up the location of retail stores, and the delivery of online orders from Skechers' warehouses—have no impact on the customer experience in retail stores. The complaint does not allege that vision-impaired users who are allegedly unable to access skechers.com find it impossible to locate or shop at Skechers' stores. Nor does the complaint plead that visually impaired customers' alleged inability to browse products on skechers.com somehow renders them unable to browse or purchase merchandise from a Skechers retail store on equal footing with nondisabled customers. *See Bang & Olufsen*, 2017 WL 1957182, at *4 (finding such website features insufficient). Unlike the websites in *Winn Dixie*, *Target Corp.*, and *Dominos Pizza*—which could be used to fill in-store prescriptions, print in-store photos, or order pizza for in-store pickup—skechers.com does not serve as a gateway to brick-and-mortar services.

### 3. Plaintiff Has Not Alleged that the Design of Skechers.com Affected Her Personal Use or Enjoyment of Skechers' Retail Locations

Regardless of whether skechers.com can be deemed a place of public accommodation, Plaintiff's ADA claim fails because she does not allege that the "website's inaccessibility impedes the plaintiff's 'access to a specific, physical, concrete space.'" *Id.* at *3. To state an ADA claim based on an allegedly inaccessible website, it is not enough to plead that a website "could hypothetically impede a blind person from enjoying all of the benefits" of a company's retail locations—an ADA complainant must allege that the website *actually* "impeded [her] own personal enjoyment of the goods and services offered at … retail locations." *Id.* at *4.

In the complaint, Plaintiff flatly admits that she never was interested in or intended to patronize one of Skechers' retail stores. Indeed, Plaintiff alleges that she relies on the ability to

purchase merchandise "from her home" because her disability makes "traveling outside of the home" difficult.  (Compl. ¶ 18.)  The complaint explains that, in order to shop, Plaintiff "accesses several websites … to compare merchandise and prices," and that she "attempted on several occasions to utilize Defendant's *website* to browse through the merchandise … with the intent of *making a purchase through the website*."  (*Id.* ¶¶ 19–20 (emphasis added).)  Plaintiff further alleges that she has suffered harm because "she is unable to participate in the same *online shopping experience* and access to merchandise *as provided at the website*" as the "non-visually impaired public."  (*Id.* ¶ 24.)  Finally, Plaintiff pleads that she requires injunctive relief because she "continues to desire to patronize *Defendant's website*, but is unable to do so[.]"  (*Id.* ¶ 25.)  Nowhere does Plaintiff plead that the website's alleged inaccessibility affected her ability to use or enjoy Skechers' physical retail outlets.  Plaintiff does not allege that she sought to purchase merchandise from a retail store, nor that she visited the website in connection with a prospective visit to a retail store, nor that she ever used or attempted to use any of the features of the Skechers website that allegedly create a nexus with Skechers' retail outlets.  And Plaintiff certainly does not allege that the website impeded her enjoyment of Skechers' retail locations— because, by her own admission, she never even intended to visit one.

Another court in this district recently rejected a disability-discrimination claim premised on nearly identical allegations about a website's functionality that were "wholly unconnected to any harm [the plaintiff] actually suffered at the place of public accommodation (i.e., the concrete, physical store)."  *See Bang & Olufsen*, 2017 WL 1957182, at *4.  In *Bang & Olufsen*, the plaintiff alleged that the defendant's website allowed customers to (1) locate physical Bang & Olufsen stores throughout the United States; (2) browse and search for merchandise; (3) research information about Bang & Olufsen merchandise and custom installation services; and (4) make

private appointments with sales representatives at Bang & Olufsen's brick-and-mortar retail locations.  *Id.* at *1.  But the plaintiff did not allege that he ever sought to patronize a Bang & Olufsen retail store or use the website to book an in-store appointment, and all of his specific factual allegations—like Plaintiff's here—related to his desire to make *online* purchases on Bang & Olufsen's website, not retail purchases at its stores.  *Id.* at *4.  In terms almost identical to those that Plaintiff uses in this case, the *Bang & Olufsen* plaintiff pleaded that "[t]he opportunity to shop for high-end, designer state of the art studio equipment from his home is an important accommodation … because travelling outside the home as a blind individual is a difficult and frightening experience."  *Id.*

The *Bang & Olufsen* Court dismissed the complaint, holding that the plaintiff had "fail[ed] to allege any facts that Bang and Olufsen's website impeded his own personal enjoyment of the goods and services offered at its retail locations."  *Id.* at *3–4.  The Court explained that the ADA does not create a cause of action for individuals seeking a more accessible online-shopping experience:

> [I]t appears that the Plaintiff never intended to utilize Bang and Olufsen's physical, retail location; but instead planned to order audio equipment online and have it delivered to his home.
>
> Plaintiff's grievance seems to be that Defendant's website does not provide a blind person with the same online-shopping experience as non-disabled persons. However, the ADA does not require places of public accommodations to create full-service websites for disabled persons.  In fact, the ADA does not require a place of public accommodation to have a website at all.  All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-mortar store.  To survive a motion to dismiss, Plaintiff must claim an actual (not hypothetical) impediment to the use of Defendant's retail location.

*Id.* at *4 (footnote omitted).

Here, Plaintiff's complaint fails to state a claim for the same reason.  As in *Bang & Olufsen*, Plaintiff's grievance is that she is "unable to participate in the same online shopping

experience" as others.  (Compl. ¶ 24.)  But the ADA does not impose such a requirement.  All it requires is that commercial websites not "impede a disabled person's full use and enjoyment of the brick-and-mortar store."  *Bang & Olufsen*, 2017 WL 1957182, at *4.  Because the complaint contains no allegation that Skechers' website impeded her own full use and enjoyment of Skechers' retail stores, the complaint must be dismissed.

### C.    Plaintiff's ADA Claim Fails for the Independent Reason that It Violates Skechers' Constitutional Right to Due Process

Statutes and regulations which permit monetary penalties against those who violate them must give defendants "fair warning of the conduct [they] prohibit[] or require[]."  *Ga. Pac. Corp. v. Occupational Safety & Health Review Comm'n*, 25 F.3d 999, 1005 (11th Cir. 1994).  This is a bedrock requirement of due process, which "requires prior notice, or 'fair warning,' of proscribed conduct."  *Monteleone v. Palmer*, No. 5:09CV202-RH/MD, 2009 WL 3067069, at *5 n.2 (N.D. Fla. 2009); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.").

This lawsuit offers a paradigmatic example of a case in which imposing liability on the defendant would violate fundamental principles of due process.  Plaintiff's complaint offers essentially no detail about what features of the Skechers website in particular violate the ADA. The complaint complains about "mislabeled links" and "empty forms" without specifying which parts of the website are allegedly improperly designed and without identifying any source of substantive accessibility standards.  The only suggestion in the complaint about what standards Plaintiff asserts Skechers has violated appears in paragraph 37, where Plaintiff alleges on information and belief that skechers.com "does not meet the Web Content Accessibility

15

Guidelines ('WCAG') 2.0 Basic Level of web accessibility."  Equally vaguely, paragraph 64 alludes to "readily available, well established guidelines on the internet for making websites accessible," but does not say what they are, who promulgates them, or in what respects skechers.com violates them.

What Plaintiff's complaint does *not* mention is that the DOJ has expressly solicited public comment in a Notice of Proposed Rulemaking as to whether privately promulgated accessibility guidelines like the WCAG 2.0 guidelines ought to be adopted at all, and, if so, what compliance levels ought to obtain.  *See* NOPR, 75 Fed. Reg. at 43,465.  The DOJ has not yet issued proposed rules, though it intends to do so in 2018.  *See* DOJ Statement of Regulatory Priorities, 80 Fed. Reg. at 77,807.

Until the DOJ issues clear guidelines about website accessibility that either adopt or decline to adopt the WCAG standards, finding an ADA violation on the basis of a website's failure to comply with the WCAG 2.0 standards—or other, unspecified "well established guidelines" (Compl. ¶ 64)—constitutes a deprivation of due process.  Because they are published by an international nonprofit organization, the WCAG guidelines are subject to change at any time, without the formal notice-and-comment process that characterizes governmental agency rulemaking in the United States.  Until the DOJ acts on the NOPR, website operators have no advance notice of what federal law requires of them.

A federal court recently dismissed a similar complaint on due process grounds.  In *Dominos Pizza*, the Central District of California heard a motion to dismiss a complaint in which a visually impaired plaintiff alleged that Dominos Pizza's website did not work properly with his screen-reading software and did not comply with WCAG 2.0.  *See* 2017 WL 1330216, at *1.  The court granted the defendant's due-process challenge, holding that plaintiff's complaint

16

"fl[ew] in the face of due process" by seeking to "impose on all regulated persons and entities a requirement that they 'compl[y] with the WCAG 2.0 Guidelines' without specifying a particular level of success criteria and without the DOJ offering meaningful guidance on this topic." *Id.* at *5. In dismissing the complaint, the court observed that it was "unable to locate a single case in which a court has suggested, much less held, that persons and entities subject to Title III that have chosen to offer online access to their goods or services must do so in a manner that satisfies a particular WCAG conformance level." *Id.* at *8.

Plaintiff's inchoate claim that Skechers' website violates unspecified sections of accessibility guidelines that the DOJ has yet to approve or reject contrasts sharply with how the ADA works in the context of brick-and-mortar accommodations. When a new building is constructed, its ADA compliance *vel non* is determined by whether it complies with the specific, detailed standards set forth in 28 C.F.R. Part 36. *See Brother v. CPL Invs, Inc.*, 317 F. Supp. 2d 1358, 1370 (S.D. Fla. 2004). Because those standards are formally codified in the Code of Federal Regulations, companies or individuals who construct new public accommodations have clear guidance as to which construction and design choices will lead to legal liability under the ADA and which will not. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) ("The regulations establish a *national standard* for minimum levels of accessibility in all new facilities.") (emphasis added) (citation omitted). In designing websites, by contrast, companies are left to guess whether they can be haled into court, as Skechers has been here, for failing to comply with ambiguous standards set by a private international consortium.

Until the DOJ adopts specific and concrete accessibility standards for commercial websites that serve as places of public accommodation, there can be no finding that a website violates the ADA because it fails to comply with the not-yet-adopted WCAG standard or other

unspecified accessibility guidelines.  To hold otherwise would violate due process.

### D.     Plaintiff's Trespass Claim Fails as a Matter of Law

Plaintiff's second cause of action alleges that Skechers "trespassed" against her "computer and the personal information and browsing history stored therein" by the "employment of software analytics which are present on and through Defendant's website, which the Plaintiff has navigated."  (Compl. ¶ 76.)  Plaintiff's novel "digital trespass" theory finds no support in Florida law.

Trespass to personal property "is the intentional use of, or interference with, a chattel which is in the possession of another, without justification."  *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. 4th DCA 1998).  Trespass to personal property entails an "attempt to seize manual control of a chattel and to remove it from the premises of one who is in lawful possession" of it. *C.I.T. Corp. v. Brewer*, 200 So. 910, 912 (Fla. 1941); *see also* Restatement (Second) of Torts § 217 (defining trespass to chattels as "intentionally dispossessing another of the chattel or using or intermeddling with a chattel in the possession of another") (citation omitted).

Plaintiff fails to state a trespass claim because neither her "personal information and browsing history" nor the rewriteable digital memory of her personal computer is a "chattel" that can be the subject of a trespass.  (Compl. ¶ 76.)  Personal chattels are "things movable, which may be carried about by the owner; such as animals, household stuff, money, jewels, coin, garments, and everything else that can be put in motion and transferred from one place to another."  *Curington v. State*, 86 So. 344, 345 (Fla. 1920).  Florida courts have consistently rejected trespass-to-chattels claims involving property that the defendant did not physically manipulate.  For instance, in *Burshan v. National Union Fire Insurance Co. of Pittsburgh*, 805 So. 2d 835, 837 (Fla. 4th DCA 2001), the plaintiff's bank accounts were garnished to satisfy a money judgment.  The plaintiff, believing the garnishment to be in error, sued for trespass to his

bank account.  The court dismissed the claim on the ground that only tangible physical property could be trespassed against.  *See id.* at 846 ("A survey of Florida law reveals that the trespass cause of action has been applied to chattels such as a black mare, logs, a wagon and mule, clothing, crates of pears, and an automobile, but never to a bank account.") (footnotes omitted). Here, the property that Plaintiff claims Skechers trespassed against is likewise wholly intangible: Plaintiff does not allege that Skechers physically moved or interfered with her property, but rather that Skechers employed "software analytics" to track her personal information and install software on her computer.  (Compl. ¶ 76.)  No Florida case recognizes such a claim for trespass to intangible *digital* property.

Plaintiff's theory would dramatically expand the field of trespass claims far beyond its common-law bounds, with significant negative consequences.  For more than a century, Florida law has applied common-law trespass to chattels to cases in which a defendant has physically interfered with movable personal property or dispossessed the plaintiff of that property.  *See, e.g.*, *Fla. Packing & Ice Co. v. Carney*, 41 So. 190, 191 (Fla. 1906) (trespass to chattels action could be maintained where tax collector seized "one wagon, one black mule, and one set of harness" without "legal right or authority to seize, levy upon, or take" that property).  There is good reason why the tort has not been extended to intangible digital property.  Systems for tracking data about website visitors are ubiquitous online; approximately 50% of sites on the internet use cookies, including the most popular sites like Google, Twitter, and YouTube.[5] Under Plaintiff's "digital trespass" theory, *every* site that tracks user data would be liable in trespass every time a user visited that website site without expressly consenting in advance to the data collection.  Such an expansive theory would wreak havoc on the modern internet.

---

[5] *See* W3Techs, World Wide Web Technology Surveys, https://w3techs.com/technologies/details/ce-cookies/all/all (last visited Oct. 25, 2017).

Plaintiff's claim also fails for the additional reason that she has not plausibly alleged that she was damaged by the alleged trespass.  "One who commits a trespass to a chattel is liable to the possessor of the chattel if the chattel is impaired as to its condition, quality, or value."  *Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326, 354 (D. Me. 2003) (quoting Restatement (Second) of Torts § 218(b)) (internal quotation marks omitted); *see also See Najieb v. Chrysler– Plymouth*, No. 01 C 8295, 2002 WL 31906466, at *10–11 (N.D. Ill. Dec.31, 2002) (damages are a required element of trespass to chattels claim).  The complaint does not plead that Skechers' alleged conduct impaired the "condition, quality, or value" of Plaintiff's computer.  To the contrary, the complaint alleges that the Plaintiff spent time and resources "remov[ing] the programs that had been installed on her computer without notice or consent."  (Compl. ¶ 82(e).)  There is no allegation that, once the software was removed, the "condition, quality, or value" of the computer was affected.  Even crediting Plaintiff's implausible allegation that she had to remove (unnamed and unspecified) "programs" that the Skechers website somehow installed on her computer, these damages are not the impairment in condition, quality, or value that are recoverable in trespass.  *See Pearl Invs.*, 257 F. Supp. 2d at 354 (dismissing trespass to chattels claim based on allegations of unauthorized network access because such access did not cause permanent damage to the network).  Plaintiff's other damages allegations merely recite the elements of the cause of action rather than specify the concrete harm skechers.com allegedly caused to Plaintiff's computer.  (*See, e.g.*, Compl. ¶ 82(a) (alleging that skechers.com caused damage by "consuming the resources *and/or* degrading the performance of Plaintiff's computer") (emphasis added).)

## IV.    CONCLUSION

The Court should dismiss Plaintiff's complaint with prejudice.

DATED: October 27, 2017                    Respectfully submitted,

                                           /s/ David M. Buckner
                                           David M. Buckner
                                           Florida Bar No. 0060550
                                           *david@bucknermiles.com*
                                           Brett E. von Borke
                                           Fla. Bar No.: 0044802
                                           *vonborke@bucknermiles.com*
                                           BUCKNER + MILES
                                           3350 Mary Street
                                           Miami, Florida 33133
                                           Telephone No.:  (305) 964-8003
                                           Facsimile No.:   (786) 523-0485


                                           /s/ Tamerlin J. Godley
                                           Tamerlin J. Godley (admitted *pro hac vice*)
                                           *tamerlin.godley@mto.com*
                                           Jordan D. Segall (admitted *pro hac vice*)
                                           *jordan.segall@mto.com*
                                           MUNGER, TOLLES & OLSON LLP
                                           350 South Grand Avenue, 50th Floor
                                           Los Angeles, California 90071
                                           Telephone No.:  (213) 683-9100
                                           Facsimile No.:   (213) 687-3702

                                           *Attorneys for Defendant Skechers
                                           USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

October 27, 2017 on the following counsel of record:

Pelayo Duran                                         *Attorneys for Plaintiff Emily Fuller*
pduran@pelayoduran.com
LAW OFFICE OF PELAYO DURAN, P.A.
4640 N.W. 7th Street
Miami, Florida 33126-2309
Telephone:     (305) 266-9780
Facsimile:     (305) 269-8311

Roderick V. Hannah
rhannah@rhannahlaw.com
RODERICK V. HANNAH, ESQ., P.A.
8751 W. Broward Blvd., Suite 303
Plantation, FL 33324
Marina Lakes, No. 3
Telephone:  (954) 362-3800
Facsimile:   (954) 362-3779

                                     */s/ David M. Buckner*
                                     David M. Buckner